No. 25-3460

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

U.S. Wholesale Outlet & Distribution, Inc., et al.,
*Plaintiffs-Appellants*,

v.

Innovation Ventures, LLC, et al.,
*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the Central District of California
2:18-cv-01077-CBM-E
Hon. Consuelo B. Marshall, District Judge

_____

# BRIEF OF NATIONAL GROCERS ASSOCIATION AND INSTITUTE FOR LOCAL SELF-RELIANCE AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS' ARGUMENT FOR REVERSAL OF THE DISTRICT COURT'S JUDGMENT DENYING INJUNCTIVE RELIEF

_____

Catherine S. Simonsen
SIMONSEN SUSSMAN LLP
418 Bamboo Lane, Suite C-18
Los Angeles, CA 90012
(917) 747-5196
catherine@simonsensussman.com

Shaoul Sussman
Thomas Mattes
SIMONSEN SUSSMAN LLP
shaoul@simonsensussman.com

*Counsel for* Amici Curiae *National Grocers Association and Institute for Local Self-Reliance*

*Of Counsel*

October 27, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1-1, *Amici* National Grocers Association and Institute for Local Self-Reliance each state that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Date:     October 27, 2025

By:  /s/ Catherine S. Simonsen
     Catherine S. Simonsen
     SIMONSEN SUSSMAN LLP
     *Counsel for* Amici Curiae
     *National Grocers Association and*
     *Institute for Local Self-Reliance*

i

## TABLE OF CONTENTS

IDENTITY AND INTEREST OF *AMICI CURIAE* ...................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .........................................3

ARGUMENT ........................................................................................................7

  I. The District Court Erred in Denying Wholesalers Injunctive Relief Under the Clayton Act.................................................................................................7

    A.    "Damages" Are Not an Element of an RPA § 2(d) Violation ..................7

    B.    Threatened Competitive Injury Is Not Required to Be Proved, and Is Conclusively Presumed, Where as Here, the Plaintiff Proves a § 2(d) Violation.................................................................................................9

    C.    Actual Injury Is Not Required to Obtain an Injunction Under Clayton Act § 16...............................................................................................13

    D.    An RPA Plaintiff Asserting a Secondary-Line RPA Claim for Injunctive Relief Satisfies the Threatened-Antitrust-Injury Requirement Where, as Here, the Plaintiff Shows Sustained, Substantial Discrimination against the Plaintiff Disfavored Purchaser ..........................................................18

  II.   The District Court Erred in Denying Wholesalers Injunctive Relief Under the California Unfair Competition Law ......................................................26

  CONCLUSION .....................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*,
    14 Cal. 4th 1247 (Cal. 1997) .......................................................................35

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016).....................................................................26

*Alan's of Atlanta, Inc. v. Minolta Corp.*,
    903 F.2d 1414 (11th Cir. 1990).................................................... 12, 26, 29, 31

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
    190 F.3d 1051 (9th Cir. 1999).....................................................................23

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)....................................................................................23

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328, 338 (1990) ....................................................................... 4, 25

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993).....................................................................................25

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)................................................................................ 4, 25

*Brown v. Google LLC*,
    2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021) .........................34

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)............................................................................. passim

*B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*,
    439 F.3d 653 (10th Cir. 2006).....................................................................22

*California v. Am. Stores Co.*,
    495 U.S. 271 (1990).....................................................................................17

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)............................................................................. passim

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (Cal. 1999) ........................................................................32

*Chroma Lighting v. GTE Prods. Corp.*,
    111 F.3d 653 (9th Cir. 1997)....................................................... 15, 26, 27, 28

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Co.*,

79 F.3d 182 (1st Cir. 1996) ........................................................27

*Corn Prods. Co. v. FTC,*
    324 U.S. 726 1945). ............................................................ 5, 13

*Ellis v. Salt River Project Agricultural Improvement & Power District,*
    24 F.4th 1262 (9th Cir. 2022) .....................................................19

*Falls City Indus., Inc. v. Vanco Beverage, Inc.,*
    460 U.S. 428 (1983) ....................................................... 13, 14

*FTC v. Fred Meyer, Inc.,*
    390 U.S. 341 (1967) ..........................................................9

*FTC v. Morton Salt Co.,*
    334 U.S. 37 (1948) ............................................. 13, 14, 28, 35

*FTC v. Simplicity Pattern Co.,*
    360 U.S. 55 (1959) ...................................................... passim

*George Haug Co. v. Rolls Royce Motor Cars Inc.,*
    148 F.3d 136 (2d Cir. 1998) .................................... 12, 13, 27, 28

*Glen Holly Ent., Inc. v. Tektronix Inc.,*
    343 F.3d 1000 (9th Cir. 2003) ...................................... 24, 25

*Grand Union Co. v. FTC,*
    300 F.2d 92 (2d Cir. 1962) ........................................... 5, 15

*Great Atl. & Pac. Tea Co. v. FTC,*
    440 U.S. 69 (1979) .........................................................12

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.,*
    392 U.S. 481 (1968) .......................................................30

*Hasbrouck v. Texaco, Inc.,*
    842 F.2d 1034 (9th Cir. 1987) ...........................................21

*In re Google Play Store Antitrust Litig.,*
    2024 U.S. Dist. LEXIS 182978 (N.D. Cal. Oct. 7, 2024) ..............36

*J. Truett Payne Co. v. Chrysler Motors Corp.,*
    451 U.S. 557 (1981) ................................................... 19, 20

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,*
    909 F.2d 1524 (3d Cir. 1990) ............................................22

*Kwikset Corp. v. Super. Ct.,*
    51 Cal. 4th 310 (Cal. 2011) ....................................... 33, 34

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574 (1986)....................................................................................25
*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) ........................................................33
*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987)..................................... 16, 19, 20, 29
*State Farm Fire & Cas. Co. v. Super. Ct.*,
    45 Cal. App. 4th 1093 (1996) ......................................................32
*Toy v. Life Line Screening of Am. Ltd.*,
    2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) ...........34
*Tri-Valley Packing Ass'n v. FTC*,
    329 F.2d 694 (9th Cir. 1964).................................................. 9, 10
*U.S. Wholesale Outlet & Distrib. v. Innovation Ventures, LLC*,
    89 F.4th 1126 (9th Cir. 2023)................................................ passim
*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006)...............................................8, 11, 12, 15
*World of Sleep, Inc. v. La-Z-Boy Chair Co.*,
    756 F.2d 1467 (10th Cir. 1985).....................................................19
*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    395 U.S. 100 (1969).......................................................................17

## STATUTES

15 U.S.C. § 15 ................................................................................7

15 U.S.C. § 13 ....................................................................... passim

15 U.S.C. § 26 ....................................................................... passim

Cal. Bus. & Prof. Code § 17203 .....................................................8

Cal. Bus. & Prof. Code § 17204 ...................................................33

## OTHER AUTHORITIES

Dissenting Statement of Comm'r Andrew N. Ferguson, *In the Matter of Southern Glazer's Wine and Spirits, LLC*, Matter No. 211-0155 (Dec. 12, 2024).............27
S. Rep. No. 1502 (1936) ...............................................................13

Stacy Mitchell, *The Policy Shift That Decimated Local Grocery Stores*, Inst. for Local Self-Reliance (Nov. 26, 2024) .................................................................... 2

Statement of Chair Lina M. Khan and Comm'r Alvaro M. Bedoya, *In the Matter of Non-Alcoholic Beverages Price Discrimination Investigation*, FTC No. 2210158, at 6-7 (Jan. 17, 2025) ............................................................................................ 2

Statement of Comm'r Alvaro M. Bedoya Joined by Chair Lina M. Khan and Comm'r Rebecca Kelly Slaughter, *In the Matter of Southern Glazer's Wine and Spirits, LLC*, FTC No. 211-0155 (December 12, 2024) ........................................ 4

vi

## IDENTITY AND INTEREST OF *AMICI CURIAE*

The National Grocers Association ("NGA") is the only trade association in the United States exclusively focused on representing the independent sector of the food industry. NGA's mission is to champion the independent grocery industry through advocacy, collaboration, education, services, and connections. The Institute for Local Self-Reliance ("ILSR") is a non-profit organization that champions small businesses and the local communities they serve.[1]

*Amici* submit this brief to convey their concern that if the district court's decision is allowed to stand, it will have severe and far-reaching implications for small businesses across the country. While dominant corporations have succeeded over the last 50 years in eroding small businesses' ability to recover damages under the Robinson-Patman Act ("RPA") in certain respects, until now the ability of independent business owners to obtain injunctive relief, based on a modest showing of threatened harm, has remained steadfast. The district court's judgment, if allowed to stand, would upend this relative certainty and erect new substantial barriers to this most important of remedies for RPA violations—the injunction

---

[1] No party's counsel authored this brief in whole or in part, no party or their counsel contributed money intended to fund the preparation or submission of this brief, and no person other than NGA and ILSR or their counsel contributed money that was intended to fund preparing or submitting the brief.

1

requiring the defendant to stop discriminating and to treat competing retailers of all sizes fairly.

Only by safeguarding the conditions under which small and independent businesses like Wholesalers compete against behemoths like Costco do we have any hope of halting and reversing our country's decades-long trend of corporate consolidation and the disappearance of small, independent retailers who serve as vital arteries of sustenance for local communities across the country.[2] When our nation's price discrimination laws are eroded by the courts, large retailers like Costco feel emboldened to use their buying power to demand special treatment, knowing they likely will face no consequences. When other competing retailers observe that the law is not being upheld, they conclude that they must merge with other retailers in order to achieve the same size and scale and, in turn, the same unfair advantages.[3] *Amici* submit that the district court's judgment seriously jeopardizes RPA enforcement and must be reversed lest another notch on the belt

---

[2] Since 1982, the market share of independent retailers has fallen from 53% to 22%. *See* Stacy Mitchell, *The Policy Shift That Decimated Local Grocery Stores*, Inst. for Local Self-Reliance (Nov. 26, 2024), https://ilsr.org/article/independent-business/policy-shift-local-grocery/.

[3] *See* Statement of Chair Lina M. Khan and Comm'r Alvaro M. Bedoya, *In the Matter of Non-Alcoholic Beverages Price Discrimination Investigation*, FTC No. 2210158, at 6-7 (Jan. 17, 2025), https://www.ftc.gov/legal-library/browse/cases-proceedings/public-statements/statement-chair-lina-m-khan-commissioner-alvaro-m-bedoya-matter-non-alcoholic-beverages-price ("Grocery stores have claimed that they must merge to position themselves to extract the same illegal concessions that [power buyers] command[].").

of corporate consolidation be forged. The preservation of robust competition from independent retailers intended by Congress with the passage of the RPA nearly 100 years ago is vital to ensuring that the substantial innovation, low prices, and contributions to the local communities they offer are available to consumers.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Robinson-Patman Act ("RPA") is the lesser-known better half of our nation's antitrust laws.[4] The Sherman Act and other provisions of the Clayton Act outlaw price-fixing, monopolization, mergers that may substantially lessen competition, and certain forms of exclusionary practices. These laws have long been interpreted as "protecti[ng] . . . competition, not competitors." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

The Robinson-Patman Act, by contrast, is explicitly based on Congress's view that only by protecting small competitors do we preserve competitive

---

[4] *See* Stacy Mitchell & Katy Milani, *The Case for Reviving the Robinson-Patman Act*, Inst. for Local Self-Reliance (Aug. 12, 2024).https://ilsr.org/article/independent-business/the-case-for-reviving-the-robinson-patman-act/; Interview of C. Simonsen, *Price Discrimination Laws—the Dormant Half of Our Antitrust Laws that Can Save Our Economy*, Capitol F. (July 25, 2025), https://www.youtube.com/watch?v=QwJYVRD9Z7o; Statement of Comm'r Alvaro M. Bedoya Joined by Chair Lina M. Khan and Comm'r Rebecca Kelly Slaughter, *In the Matter of Southern Glazer's Wine and Spirits, LLC*, FTC No. 211-0155 (December 12, 2024), https://www.ftc.gov/system/files/ftc_gov/pdf/statement-bedoya-joined-by-khan-slaughter-southern-glazers.pdf.

marketplaces. When Congress passed the RPA in 1936, it aimed to substantially strengthen the Clayton Act of 1914's prohibitions on price discrimination by making it easier for victims to "reach such discriminations 'in their incipiency,' before the harm to competition is effected," and to obtain an injunction against the unlawful conduct before it is too late. *Corn Prods. Co. v. FTC*, 324 U.S. 726, 738 (1945).

In many instances—including RPA § 2(d), which outlaws per se the payment of promotional allowances to one retailer unless they are offered on proportionally equal terms to all competing retailers—Congress has dispensed with the need to prove threatened harm to competition at all. *See Grand Union Co. v. FTC*, 300 F.2d 92, 99 (2d Cir. 1962). Instead, Congress determined that proof of disproportional promotional payments to the favored competing retailer would be sufficient to establish a violation, and proof of "threatened loss or damage" by such violation would entitle the plaintiff to injunctive relief from future violations. 15 U.S.C. § 26; *see FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 65 (1959).

The district court's order and judgment in this case, denying Wholesalers injunctive relief on their § 2(d) claim and corresponding California Unfair Competition Law ("UCL") claim, contravenes the text of the act, Congressional intent, and these binding authorities. On remand following Wholesalers' first appeal, tasked with this Court's simple, clear instruction to "consider whether there

4

is any violation of the antitrust laws that threatens loss or damage to the Wholesalers in light of our ruling here," *U.S. Wholesale Outlet & Distrib. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1147 n.7 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 141 (2024), the district court went out of its way to answer that question in the negative.

First, the district court erroneously imported a "damages" element into a *prima facie* RPA § 2(d) violation. No such element exists, and Wholesalers seek only injunctive relief, not damages.

Second, the district court wrongly held Wholesalers to the RPA § 2(a) requirement to prove threatened competitive injury. But RPA § 2(d) is a per se offense: proof of the violation conclusively establishes harm to competition.

Third, the district court incorrectly required Wholesalers to show *actual* injury, even though Clayton Act § 16 requires merely the threat of harm.

Fourth, the district court misunderstood and misapplied the antitrust injury doctrine. The requirement of antitrust injury in injunctive relief and damages cases derives from Clayton Act § 16's and § 4's requirements to show threatened or actual injury "by reason of" a violation of the antitrust laws. 15 U.S.C. §§ 26, 15. The Supreme Court has held this means the plaintiff must show threatened or actual loss "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo*

5

*Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Where, as here, a disfavored buyer shows that its supplier paid its competitor substantially disproportional promotional allowances over a sustained period of time in violation of RPA § 2(d), it necessarily establishes threatened antitrust injury, because such proof establishes that the continuation of such discriminatory treatment threatens to deprive the plaintiff of future sales or profits or to otherwise require the plaintiff to compete against the favored buyer "at a hopeless competitive disadvantage." *Simplicity Pattern*, 360 U.S. at 69. The district court erred by ignoring the relevant antitrust injury authority and instead requiring Wholesalers to show "[a] hallmark of the requisite competitive injury" in RPA *§ 2(a) damages* cases—"the diversion of sales or profits from a disfavored purchaser to a favored purchaser"—to establish standing to obtain an *injunction* for violation of RPA *§ 2(d)*. ER-13 ¶ 34 (quoting *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006)).

Fifth and finally, the court erred in denying Wholesalers injunctive relief under the California UCL. In proving that Living Essentials "pa[id]" Costco promotional allowances without making "such payment . . . available on proportionally equal terms to" Wholesalers, 15 U.S.C. § 13(d), Wholesalers proved that they suffered economic injury and therefore are entitled to injunctive relief under the UCL. *See* Cal. Bus. & Prof. Code § 17203.

*Amici* urge this Court to take this opportunity not only to reverse the district court's errors but to educate litigants, lawyers, and the public at large about the relatively low standards a small business must meet to obtain relief from discriminatory treatment. Without this clarity, RPA enforcement will languish contrary to Congressional intent, and dominant corporations will understand they can force discrimination upon market participants without repercussion.

## ARGUMENT

### I.    The District Court Erred in Denying Wholesalers Injunctive Relief Under the Clayton Act

#### A. "Damages" Are Not an Element of an RPA § 2(d) Violation

RPA § 2(d) prohibits a seller from paying a customer for "services or facilities" furnished by the customer in connection with the resale of the seller's product, unless the opportunity to receive such a payment is available to all of the seller's customers on "proportionally equal terms." *See FTC v. Fred Meyer, Inc.*, 390 U.S. 341, 350–53 (1967) (discussing legislative history). "There are three essential elements which must be established in order to prove a violation of section 2(d)." *Tri-Valley Packing Ass'n v. FTC*, 329 F.2d 694, 707–08 (9th Cir. 1964).

> Where[:]
> (a) two or more customers of a particular seller compete with each other in the distribution of the products of that seller,

7

(b) the latter shall not pay or contract for the payment of anything of value to or for the benefit of such a customer as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the sale, or offering for sale of any products sold or offered for sale by the seller,

(c) unless the allowance is available on proportionally equal terms to the competing customers.

*Id.*

In reciting and holding Wholesalers to proving the elements of their § 2(d) claim, the district court erred in adding an entirely new and additional element— damages—stating:

In order to prevail on a Section 2(d) claim, a plaintiff must prove:

[(1)-(4) the *Tri-Valley Packing* elements]; *and*

(5) *damages which, in a private plaintiff antitrust case such as this, each plaintiff must prove antitrust injury, which means the type of injury the antitrust laws were designed to prevent, which was a material cause of each plaintiff's injury*.

ER-10-11 ¶ 26 (emphasis added). As the plain text of § 2(d) and binding Ninth Circuit precedent make clear, damages are not an element of an RPA § 2(d) violation.

"Damages" were the only purported "element" of Wholesalers' § 2(d) claim that the district court found Wholesalers failed to prove. The court affirmatively found that Wholesalers had proved *all* of the other required elements.

As to element (a) under the *Tri-Valley Packing* framework, the court found, "[b]ased on the evidence in the record and the Ninth Circuit's mandate, . . .

8

[Wholesalers] proved they were in competition with [Costco]." ER-11 ¶ 28. As to elements (b) and (c), the district court found that "Living Essentials made promotional allowances to Costco that it did not make available to Plaintiffs on proportional terms." ER-10 ¶ 22; *see* ER-11–12 ¶¶ 29–31 (discussing disproportionality of promotional allowances).

Despite finding that Wholesalers had proved all three elements of a § 2(d) claim, the district court erroneously held that "Plaintiffs have not prevailed on their RPA claims," and on that faulty basis denied Wholesalers' request for injunctive relief. ER-15 ¶ 43. Because Wholesalers satisfied all three elements of a § 2(d) claim, the court was required to assess whether Wholesalers had satisfied the additional, modest standards for injunctive relief under Clayton Act § 16 and the California UCL. As explained below, they did. *See infra* § I.C.

## B. Threatened Competitive Injury Is Not Required to Be Proved, and Is Conclusively Presumed, Where as Here, the Plaintiff Proves a § 2(d) Violation

The district court's next error was to import the threatened-competitive-injury element of an RPA § 2(a) violation into Wholesalers' § 2(d) claim. In the district court's discussion of *antitrust injury*, it quoted a passage from *Volvo*, which deals with the distinct concept of *injury to competition*: "Robinson-Patman [§ 2(a)] does not 'ban all price differences charged to different purchasers of commodities of like grade and quality'; rather, the Act 'proscribes price

discrimination only to the extent that it threatens to injure competition,'" a "hallmark" of which is "the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Volvo*, 546 U.S. at 176–77 (citation omitted), *quoted in* ER-13 ¶ 34. The quoted portion of *Volvo* concerns the RPA § *2(a)* requirement that "'the effect of [the price] discrimination may be . . . to injure, destroy, or prevent competition' to the advantage of a favored purchaser." *Volvo*, 546 U.S. at 176–77 (quoting 15 U.S.C. § 13(a)).

Unlike RPA § 2(a), § 2(d) contains no threatened-competitive-injury requirement. Rather, § 2(d), along with §§ 2(c) and 2(e), "unqualifiedly make unlawful certain business practices other than [§ 2(a)] price discriminations. . . . [T]he proscriptions of these three subsections are absolute. Unlike § 2(a), none of them requires, as proof of a *prima facie* violation, a showing that the illicit practice [may have] an injurious or destructive effect on competition." *Simplicity Pattern*, 360 U.S. at 65–66. Put simply, § 2(d) "has no 'competitive injury' . . . escape clause." *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1419 (11th Cir. 1990) (citing *Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 79 (1979)); *accord George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 145 (2d Cir. 1998).

It bears noting that not even § 2(a) requires a showing of *actual* competitive injury. RPA § 2(a) "does not require the [fact finder] to find that injury has actually

10

resulted. The statute requires no more than that the effect of the prohibited price discriminations 'may be substantially to lessen competition . . . or to injure, destroy, or prevent competition.'" *FTC v. Morton Salt Co.*, 334 U.S. 37, 46 (1948) (quoting 15 U.S.C. § 13(a)); *accord Corn Prods.*, 324 U.S. at 742  ("[§ 2(a)] does not require that the discriminations must in fact have harmed competition, but only that there is a reasonable possibility that they 'may' have such an effect."). This is because "[t]he statute is designed to reach such discriminations 'in their incipiency,' before the harm to competition is effected. It is enough that they 'may' have the prescribed effect." *Corn Prods.*, 324 U.S. at 738; *see* S. Rep. No. 1502, at 4 (1936) ("[T]o catch the weed in the seed will keep it from coming to flower."). These same principles have been reaffirmed by the Supreme Court for decades. *See Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435 (1983) ("In keeping with the Robinson-Patman Act's prophylactic purpose, § 2(a) does not 'require that the discriminations must in fact have harmed competition.'") (citation omitted).

In this sense, the RPA, which amended the 1914 Clayton Act's original, but weaker, prohibitions on price discriminations, "was intended to have a broader scope than the corresponding provision of the old Clayton Act." *Morton Salt*, 334 U.S. at 46 n.14. Indeed, over a decade after the Clayton Act's original prohibitions on price discrimination were passed, "[a] lengthy investigation conducted in the

11

1930's by the Federal Trade Commission disclosed that several large chain buyers were *effectively avoiding [the Clayton Act's original prohibitions]* by taking advantage of gaps in its coverage," including by inducing suppliers to pay them "'[a]dvertising allowances' . . . in return for certain promotional services"— "advantages" that "the small independent stores," "[l]acking the purchasing power," could not "demand" and which put them "at a hopeless competitive disadvantage." *Simplicity Pattern*, 360 U.S. at 69 (emphasis added). In enacting the RPA amendments to the Clayton Act, Congress sought to lower the proof required of these small, independent stores so that price discrimination would be eliminated—even if it only *threatened* injury to these smaller rivals. *See Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653, 657 (9th Cir. 1997).

Congress went even further with § 2(d), eliminating the requirement to show threatened competitive injury altogether, thereby making violation of § 2(d) a per se offense. *See Grand Union*, 300 F.2d at 99; *U.S. Wholesale*, 89 F.4th at 1134 ("To prevail on a claim for injunctive relief under section 2(d), the plaintiff . . . need not make 'a showing that the illicit practice has had an injurious or destructive effect on competition.'") (quoting *Simplicity Pattern*, 360 U.S. at 65).

The district court disregarded both this Congressional intent and the letter of the law by erroneously importing the threatened-competitive-injury requirement of § 2(a) into its analysis of Plaintiff's § 2(d) claim. In so doing, the district court

proceeded to analyze a question it did not need to ask and held Wholesalers to a standard they were not required to meet—whether Wholesalers had shown one of the "hallmark[s] of the requisite competitive injury [for § 2(a)]," namely, "the diversion of sales or profits from a disfavored purchaser to a favored purchaser." ER-13 ¶ 34 (quoting *Volvo*, 546 U.S. at 177). Indeed, the district court squarely stated the incorrect standard, imported from RPA § 2(a), to which it held Wholesalers:

> Plaintiffs must . . . offer[] evidence that their "failure to receive an advertising allowance . . . enabled [Costco] to lower [its] prices and divert sales, or that [Plaintiffs were] required to lower [their] prices to an unprofitable level in response to such low prices."

*Id.* ¶ 35 (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 737 (9th Cir. 1987)). No such showing was required for Wholesalers' § 2(d) claim, and holding them to that standard was thus error.

## C. Actual Injury Is Not Required to Obtain an Injunction Under Clayton Act § 16

Related to its error of importing the § 2(a) threatened-competitive-injury requirement into the § 2(d) context, the district court also confused the higher standard for obtaining damages under Clayton Act § 4 with the lesser showing required to obtain an injunction under Clayton Act § 16.

Clayton Act § 16 entitles "[a]ny person, firm, corporation, or association . . . to sue for and have injunctive relief . . . against *threatened loss or damage* by a

13

violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity." 15 U.S.C. § 26 (emphasis added). The "evident import of Congress' reference to 'threatened loss or damage' is not to constrict the availability of injunctive remedies against violations that have already begun or occurred, but rather *to expand their availability against harms that are as yet unrealized*." *California v. Am. Stores Co.*, 495 U.S. 271, 282 n.8 (1990) (*citing Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 & n.24 (1969)) (emphasis added). The Supreme Court has expressly instructed that injunctive relief under § 16 is "available even though the plaintiff *has not yet suffered actual injury*." *Zenith Radio*, 395 U.S. at 130 (1969) (emphasis added); *accord Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 (1986). Similarly, "§ 4 requires a showing of injury to 'business or property' . . . while § 16 contains no such limitation." *Id.* Thus, "some of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16." *Id.* at 111 n.6.

Accordingly, to secure injunctive relief, a private plaintiff must show only "threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* at 113 (quoting *Brunswick Corp.*, 429 U.S. at 489). As this Court instructed in its

14

disposition of Wholesalers' first appeal: "In order to obtain injunctive relief, the Wholesalers must prove 'threatened loss or damage by a violation of the antitrust laws.' 15 U.S.C. § 26. . . . On remand, the district court should consider whether there is any violation of the antitrust laws that threatens loss or damage to the Wholesalers in light of our ruling here." *U.S. Wholesale*, 89 F.4th at 1147 n.7.

The district court did not apply anything resembling this standard in determining whether Wholesalers were entitled to injunctive relief under Clayton Act § 16. Instead, the district court erroneously relied on RPA § 2(a) cases (as discussed above) and Clayton Act § 4 cases, in which the plaintiffs sought trebled damages and therefore were required to show *actual* injury:

- The district court relied on *Ellis v. Salt River Project Agricultural Improvement & Power District*, a Sherman Act § 2 case in which the plaintiff sought damages under § 4. 24 F.4th 1262, 1273 (9th Cir. 2022), *quoted in* ER-13 ¶ 33.

- The court cited *Rutman*, where the plaintiff sought damages and therefore the court required proof "that a disfavored purchaser has been actually 'injured' *within the meaning of § 4* [of the] Clayton Act." *Rutman*, 829 F.2d at 737 (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981)) (emphasis added), *cited in* ER-13 ¶ 34.

15

- *Rutman* in turn relied on *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, but that case also turned on the Clayton Act § 4 requirement of proof of *actual* damages. 756 F.2d 1467, 1479-1480 (10th Cir. 1985) ("[T]he requisite [actual] injury and damages cannot be presumed from a showing of illegal discrimination alone" where the "plaintiff seek[s] damages for a violation of section 2(e) because *such damages are also governed by section 4 of the Clayton Act*.") (emphasis added).

- Meanwhile, "[t]he question presented" in the cited *J. Truett Payne* case was "the *appropriate measure of damages* in a suit brought under *§ 2(a)*." *J. Truett Payne*, 451. U.S. at 559 (emphases added).

In relying exclusively on cases in which the plaintiff sought damages under Clayton Act § 4, the court erroneously required Wholesalers here to show that Living Essentials' violation of RPA § 2(d)—a violation which no one can dispute Wholesalers proved—caused Wholesalers actual injury. Specifically, the Court erroneously held Wholesalers to the standard of proving that Costco actually used the disproportional promotional allowances it received from Living Essentials to "lower [its] prices and divert sales, or that [Plaintiffs were] required to lower [their] prices to an unprofitable level in response to such low prices." ER-13 ¶ 35 (quoting *Rutman*, 829 F.2d at 737).

16

No such showing was required to prove that Living Essentials' undisputed "violation of the antitrust laws . . . threatens loss or damage to the Wholesalers." *U.S. Wholesale*, 89 F.4th at 1147. Wholesalers demonstrated that Living Essentials' payment of disproportional promotional allowances to Costco threatened to deprive Wholesalers of sales, customers, revenues, and profits. Indeed, the district court itself made a specific finding that the disproportional payments "allowed Costco to experience a 'sales lift' in 5-hour ENERGY®, and Plaintiffs expected to receive a similar sales lift had Defendant offered them the same promotions." ER-10 ¶ 23; *see also* Op. Br. at 11–12 (quoting same). No further showing was required to prove Wholesalers' entitlement to an injunction under Clayton Act § 16.

*Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9th Cir. 1987), illustrates the point. In *Hasbrouck*, the plaintiff sought damages under Clayton Act § 4 for the defendant's violation of RPA § 2(a). *See id.* at 1037. In discussing whether the plaintiff had proven the "actual injury" required for damages, the court clarified that, "[u]nder section 2(a), all that is required to establish illegal price discrimination is proof that competitive injury may result. *Once such a showing is made, the plaintiff is entitled to an injunction* preventing defendant from engaging in the anti-competitive conduct." *Id.* at 1042 (emphasis added). It was only because the plaintiff in that case sought damages under Clayton Act § 4 that, as the court explained, the plaintiff was required to make some further showing of "actual

17

injury and causation." *Id.* The analysis is no different in a § 2(d) case. Where, as here, the plaintiff proves a violation and "threatened loss or damage by [that] violation," 15 U.S.C. § 26, that proof entitles the plaintiff to injunctive relief. No further showing is required, and the district court erred in holding otherwise.[5]

### D. An RPA Plaintiff Asserting a Secondary-Line RPA Claim for Injunctive Relief Satisfies the Threatened-Antitrust-Injury Requirement Where, as Here, the Plaintiff Shows Sustained, Substantial Discrimination against the Plaintiff Disfavored Purchaser

The district court also misunderstood the threatened-antitrust-injury requirement, effectively conflating it with one of many ways to prove actual, quantified damages.

Antitrust injury is "loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill*, 479 U.S. at 113 (quoting *Brunswick*, 429 U.S. at 489); *see also Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055-1057 (9th Cir. 1999) (discussing antitrust injury). "[I]n order to [obtain] injunctive relief under § 16, a

---

[5] *See also, e.g.*, *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990) ("Demonstrating [threatened] competitive injury as part of a *prima facie* case [under § 2(a)] suffices to support injunctive relief," and no "further examination" necessary to prove "plaintiff's entitlement to treble damages under section 4 of the Clayton Act" is required); *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 668 (10th Cir. 2006) (holding district court erred when it concluded that because the plaintiff "failed to meet its evidentiary burden in regard to past violations" of the RPA "it would be impossible for [plaintiff] to show a threat of future injury").

private plaintiff must [show] *threatened* loss or damage" of this nature, while a plaintiff seeking damages under Clayton Act § 4 must show *actual* antitrust injury. *Cargill*, 479 U.S. at 113 (emphasis added).

Antitrust injury is a standing concept—albeit statutory, not constitutional. *See Am. Ad Mgmt.*, 190 F.3d at 1054 (citing *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 530–35 (1983)). At its core, it specifies the *nature* of the actual or threatened injury required for a private plaintiff to recover. In other words, it does not specify a requisite *amount* of injury, and it does not do the work of specifying whether the injury must have actually occurred in the past, or must merely be threatened in the future. It is a modest additional requirement that the plaintiff's actual or threatened injury (which the plaintiff must prove regardless for Article III standing) flows from the aspect of the defendant's conduct that contravenes the antitrust statute at issue (here, the RPA). *See Cargill*, 479 U.S. at 113.

The concept of antitrust injury can best be understood by studying cases in which the Supreme Court has found the nature of the plaintiff's claimed injury did not rise to the level of antitrust injury. These cases have almost exclusively involved the Sherman Act or Clayton Act § 7, not the RPA, and claims for damages under Clayton Act § 4, rather than an injunction under Clayton Act § 16. In its seminal *Brunswick* case, "the Supreme Court concluded . . . that antitrust damages

19

are not available 'where the sole injury alleged is that [failing] competitors were continued in business [by the defendant's acquisition of them,] thereby denying [plaintiffs] an anticipated increase in market shares.'" *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003) (quoting *Brunswick*, 429 U.S. at 484) (alterations in original).

Likewise, in *Cargill*, the Supreme Court held that "loss or damage to a competitor due merely to increased competition, such as a possible diminution of profits due to price competition following a merger by other competitors is not antitrust injury." *Glen Holly Ent.*, 343 F.3d at 1008 (discussing *Cargill*, 479 U.S. at 115). And in *Atlantic Richfield Co. v. USA Petroleum Co.*, the Supreme Court held that "[a]lthough a vertical, maximum-price-fixing agreement is unlawful under § 1 of the Sherman Act, it does not cause a competitor antitrust injury unless it results in predatory pricing" because "cutting prices" to non-predatory levels "in order to increase business often is the very essence of competition" under Sherman Act jurisprudence. 495 U.S. at 338-339 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)).

In these cases, the Supreme Court has often repeated the mantra that the Sherman Act was "enacted for 'the protection of competition, not competitors.'" *Atl. Richfield*, 495 U.S. at 338 (quoting *Brown Shoe*, 370 U.S. at 320); *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220–24

20

(1993) (same for primary-line RPA claims). These cases establish the rule that injury to a competitor, without injury to the competitive process itself, is insufficient to establish antitrust injury for purposes of a private Sherman Act, Clayton Act § 7, or primary-line RPA claim.

The law is fundamentally different for secondary-line RPA claims like Wholesalers' here. In secondary-line RPA cases, "a seller gives one purchaser a more favorable price than another." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc*., 836 F.3d 1171, 1187 (9th Cir. 2016)*, quoted in U.S. Wholesale*, 89 F.4th at 1134. Therefore "the injury to secondary-line competition the RPA seeks to prevent *is analogous, if not identical, to an injury to competitors of a favored buyer*." *Alan's of Atlanta, Inc*., 903 F.2d at 1427 (emphasis added). Wholesalers' RPA § 2(d) claim is a secondary-line claim because they assert that Living Essentials (the seller) gave Costco (the favored buyer) promotional payments that Living Essentials failed to give Wholesalers (the disfavored buyers) on proportionally equal terms, thereby injuring competition between Wholesalers and Costco (the discriminating seller's customers).

In secondary-line RPA cases, "injury to competition . . . is conclusively established by proof of injury to a competitor." *Chroma Lighting*, 111 F.3d at 655; *see also George Haug*, 148 F.3d at 143-144 ("[I]n secondary-line [RPA] cases, . . . the same sort of antitrust injury which is a prerequisite under the Sherman Act

21

[need not] be shown.") (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1272 (3d Cir. 1995), *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Co.*, 79 F.3d 182, 192–193 (1st Cir. 1996), and *Chroma Lighting*, 111 F.3d at 658). Thus, the rule in Sherman Act and primary-line RPA cases—that "mere" harm to a competitor, without an independent showing of harm to the competitive process, is insufficient to establish antitrust injury—does not apply. Instead, harm to a competitor and harm to competition are synonymous in a secondary-line RPA case. *See* Dissenting Statement of Comm'r Andrew N. Ferguson, *In the Matter of Southern Glazer's Wine and Spirits, LLC*, Matter No. 211-0155, at 8 (Dec. 12, 2024) ("[T]he statutory language of 'competitive injury' in the Robinson-Patman Act refers solely to an individual competitor, not overall competition in a relevant market.").

The Supreme Court has held (albeit in an RPA § 2(a) case, not an antitrust injury case) that when disfavored purchasers "ha[ve] to pay [a supplier] substantially more for their goods than their competitors had to pay," it is "obvious[] that *the competitive opportunities of [the disfavored purchasers] were injured*." *Morton Salt*, 334 U.S. at 46–47 (emphasis added). Put differently, under *Morton Salt*, "a substantial price difference over time [inherently] . . . may harm the competitive opportunities of individual merchants," i.e., necessarily causes them antitrust injury, both threatened and actual. *Chroma Lighting*, 111 F.3d at 654;

22

*see also George Haug*, 148 F.3d at 142 (interpreting *Morton Salt* to hold that "evidence of a substantial price difference over time" constitutes evidence of "injury to an individual competitor").

Taken together, the Supreme Court in *Morton Salt* and several courts of appeals all recognize that substantial differences in price or promotional allowances over time harm the disfavored purchaser and therefore establish antitrust injury—both actual and threatened. Crucially, actual or threatened "lower resale prices are not necessary to establish [actual or threatened] injury." *Alan's of Atlanta*, 903 F.2d at 1426 n.18.

The district court thus erred as a matter of law in holding that "Plaintiffs have not met their burden [to show threatened antitrust injury] by simply [pointing to] the 'depriv[ation] of hundreds of thousands of dollars in promotional payments'" over time. ER-13 ¶ 36 (alterations in original). The district court affirmatively found—as a matter of fact—that "the dollar per unit value of the promotions to Plaintiffs [fell] *far below* the value of promotions to Costco," and continued for years. ER-12 ¶ 31 (emphasis added); *see also* ER-8 ¶ 9, ER-9 ¶¶ 18–19 (establishing the sum total value of promotional payments paid to Costco and Wholesalers, respectively). The district court thus found that Wholesalers had submitted the precise type of evidence that is sufficient under binding Supreme Court and Ninth Circuit authority to establish antitrust injury in secondary-line

23

RPA cases—substantial price differences (in the form of disproportional promotional allowances) over a sustained period of time.

Indeed, it is hard to conceive of a showing more onerous than the proof the district court required of Wholesalers: proof that Wholesalers' "failure to receive an advertising allowance . . . enabled [Costco] to lower [its] prices and divert sales, or that [Wholesalers were] required to lower [their] prices to an unprofitable level in response to such low prices," ER-13 ¶ 35 (quoting *Rutman*, 829 F.2d at 737). As the Supreme Court explained over 50 years ago when it rejected an analogous "passing-on" defense in the context of Sherman Act § 1 conspiracy overcharge cases:

> A wide range of factors influence a company's pricing policies. Normally the impact of a single change in the relevant conditions cannot be measured after the fact; indeed a businessman may be unable to state whether, had one fact been different (a single supply less expensive, general economic conditions more buoyant, or the labor market tighter, for example), he would have chosen a different price. Equally difficult to determine, in the real economic world rather than an economist's hypothetical model, is what effect a change in a company's price will have on its total sales.

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492–93 (1968). Proving that a direct purchaser passed on an overcharge and did not suffer resulting diverted sales or lost profits, the Supreme Court explained, "would require a convincing showing of each of these virtually unascertainable figures," and accordingly "*would normally prove insurmountable*." *Id.* at 493 (emphasis added).

24

Thus, the court held, "when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a *prima facie* case of injury," even if he may have passed the entire overcharge on to downstream purchasers. *Id.* at 489.

Similarly, in a secondary-line RPA case, when a disfavored buyer shows that its competitor received sustained, substantially disproportional promotional allowances from a supplier, the plaintiff has also made a showing of injury—threatened and actual—regardless of whether the plaintiff is capable of directly connecting those special payments to specifically-identified, lowered prices of the favored competitor and resulting lost profits to the plaintiff. Supreme Court precedent dictates that the plaintiff is not required to go two steps further, to show the nearly impossible-to-prove downstream effects of that discrimination, in order to establish "loss or damage 'of the type the [RPA was] designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill*, 479 U.S. at 113 (quoting *Brunswick*, 429 U.S. at 489). The district court erred in holding Wholesalers to this "insurmountable" task as a prerequisite to injunctive relief. *Cf. Alan's of Atlanta*, 903 F.2d at 1426 n.18 (holding district court erred in requiring plaintiff to show that "the discriminatory benefits received by [the favored buyer] were . . . passed on in the form of lower prices to its consumers" or that the

25

disfavored buyer "lowered prices to compete with [the favored buyer]," in order to establish (actual) antitrust injury).

## II. The District Court Erred in Denying Wholesalers Injunctive Relief Under the California Unfair Competition Law

The district court also erred in denying Wholesalers their requested injunction under the California UCL. The district court's only reason for denying Wholesalers UCL injunctive relief was that "Plaintiffs have not prevailed on their RPA claims." ER-15 ¶ 43. But as explained above, the district court in fact found that Wholesalers had proved every single element of their § 2(d) claim. Accordingly, Wholesalers necessarily proved a violation of the unlawful prong of the UCL. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) ("By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable.") (quoting *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (Cal. 1996)).

Wholesalers also satisfied the UCL standing requirements for obtaining an injunction, because they showed they "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing under the UCL, plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair

26

business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (Cal. 2011). "There are innumerable ways in which economic injury from unfair competition may be shown," including by showing that "[a] plaintiff . . . acquire[d] in a transaction less, than he or she otherwise would have." *Id.* at 323; *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 527–28 (2022) (collecting cases).

In this case Wholesalers "acquire[d] in a transaction less, than [they] otherwise would have." *Kwikset*, 51 Cal. 4th at 323. Wholesalers proved that Living Essentials violated RPA § 2(d) by "pay[ing]" Costco promotional allowances without making "such payment . . . available on proportionally equal terms to" Wholesalers. 15 U.S.C. § 13(d). In other words, had Living Essentials complied with the RPA, and by extension the UCL, it would have made greater payments to Wholesalers. Wholesalers thus received fewer promotional payments than they would have received due to the law violation, and therefore suffered injury in fact. *See, e.g.*, *Brown v. Google LLC*, 2021 U.S. Dist. LEXIS 244695, at *46–48, *52 (N.D. Cal. Dec. 22, 2021) (plaintiffs alleged injury in fact by alleging that "Google previously has paid individuals for browsing histories" but due to Google's unlawful conduct plaintiffs "received no money" from Google for their browsing history); *Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872, at *6–7 (N.D. Cal. Mar. 19, 2024).

27

Living Essentials may argue that Wholesalers would not "otherwise" have "acquire[d]" more from Living Essentials in the "but-for" world in which no violation occurred, because Living Essentials could have avoided violating the law by simply giving Costco fewer promotional payments. *See Kwikset*, 51 Cal. 4th at 323-324. This argument ignores the "innumerable ways in which economic injury from unfair competition may be shown." *Id.* at 323. Regardless of whether the conduct is framed as Living Essentials paying Costco too much, or paying Wholesalers too little, the fundamental economic injury is the same—comparatively disadvantageous treatment. *See ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*, 14 Cal. 4th 1247, 1259-1260 (Cal. 1997) (explaining that the RPA was designed to ensure the same treatment across customers of a given supplier). As the U.S. Supreme Court explained, it is "obvious[] that the competitive opportunities of certain merchants [a]re injured when they ha[ve] to pay [their supplier] substantially more for their goods than their competitors ha[ve] to pay." *Morton Salt*, 334 U.S. at 46–47. It is equally obvious that Costco's receipt of a disproportional share of Living Essentials' promotional allowances impaired Wholesalers' "competitive opportunities," *id*. at 46, by "add[ing] to [Costco's] cost advantage," thereby causing economic injury to Wholesalers. *ABC Int'l Traders*, 14 Cal. 4th at 1260. Thus, regardless of the framing, Wholesalers satisfied the UCL

28

standing requirement and are therefore entitled to an injunction against Living Essentials' continuing violations of the law.[6]

**CONCLUSION**

The Court should reverse the district court's judgment and remand with instructions to grant Wholesalers' requested injunctive relief.

Date:        October 27, 2025            Respectfully submitted,

                                    By:  /s/ Catherine S. Simonsen
                                         Catherine S. Simonsen
                                         California Bar No. 307325
                                         SIMONSEN SUSSMAN LLP
                                         418 Bamboo Lane, Suite C-18
                                         Los Angeles, CA 90012
                                         Tel: (917) 747-5196
                                         catherine@simonsensussman.com
                                         *Counsel for* Amici Curiae *National Grocers Association and Institute for Local Self-Reliance*

---

[6] The "conditions and principles [under which] injunctive relief . . . is granted by courts of equity" are present here. 15 U.S.C. § 26. Importantly, even if Wholesalers had sought and proved damages for Living Essentials' historical violations, they still would be (and are) entitled to an injunction against Living Essentials' continuing violations. "These harms are ongoing and cannot be made right simply by [Living Essentials] writing [Wholesalers] a large check. . . . [T]he public interest, which is perfectly aligned with the restoration of free and unfettered competition, would be well served by a permanent injunction." *In re Google Play Store Antitrust Litig.*, 2024 U.S. Dist. LEXIS 182978, at *78–79 (N.D. Cal. Oct. 7, 2024), *aff'd*, 147 F.4th 917 (9th Cir. 2025).

Shaoul Sussman
New York Bar No. 5820782
Thomas G. Mattes
California Bar No. 355010
SIMONSEN SUSSMAN LLP
shaoul@simonsensussman.com
thomas.mattes@simonsensussman.com
*Of Counsel*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-3460

I am the attorney or self-represented party.

**This brief contains 6,962 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Catherine S. Simonsen     **Date** October 27, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**           *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I caused to be filed electronically the foregoing Brief of National Grocers Association and Institute for Local Self-Reliance as *Amici Curiae* in Support of Plaintiffs' Argument for Reversal of the District Court's Judgment Denying Injunctive Relief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate ACMS system. Participants in the case who are registered ACMS users will be served by the appellate ACMS system.

Date:     October 27, 2025

By:   /s/ Catherine S. Simonsen
        Catherine S. Simonsen
        SIMONSEN SUSSMAN LLP
        *Counsel for* Amici Curiae *National Grocers Association and Institute for Local Self-Reliance*